**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:

THE TABLE, LLC,                    Case No.: 6:16-bk-07294-RAC
                                   Chapter 11
          Debtor.                  EIN: 45-3617468
_____/

### PLAN OF REORGANIZATION SUBMITTED BY THE TABLE, LLC

**COUNSEL FOR DEBTOR**

Jeffrey S. Ainsworth, Esquire
Florida Bar No.: 0060769
E-mail: *jeff@bransonlaw.com*
**BransonLaw, PLLC**
1501 East Concord Street
Orlando, Florida 32803
Telephone: (407) 894-6834
Facsimile: (407) 894-8559

**February 28, 2017**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

IN RE:

**THE TABLE, LLC,**                                  **Case No.: 6:16-bk-07294-RAC**
                                                     **Chapter 11**
                **Debtor.**                          **EIN: 45-3617468**
_____/

## PLAN OF REORGANIZATION SUBMITTED BY THE TABLE, LLC

  **THE TABLE, LLC** (the "Debtor"), by and through its undersigned counsel, hereby proposes the following Plan of Reorganization ("Plan"), pursuant to Chapter 11 of the Code, 11 U.S.C. § 101, *et seq.*

## SUMMARY

  This Plan proposes to pay creditors of the Debtor from cash flow received from the business and any and all lawful business means.

  This Plan provides for two (2) classes of secured claims; two (2) classes of unsecured claims; and one (1) class of equity interests. Non-Insider unsecured creditors holding allowed claims will receive monthly payments equal to one-hundred percent (100%) of their allowed claim. Insider unsecured creditors holding allowed claims will receive monthly payments after all other claims are paid in full. This Plan also provides for the payment of administrative and priority claims.

  The Debtor has filed this Plan pursuant to Section 1121 of the Bankruptcy Code. Reference is made to the Debtor's Disclosure Statement distributed contemporaneously with the Plan for a discussion of the Debtor's business history, a summary of significant events that occurred during the pendency of the Chapter 11 case and a summary of the Plan and certain related matters, including procedures for voting on the Plan. All Holders of Claims against and Equity Interest in the Debtor entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

  **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**TABLE OF CONTENTS**

**ARTICLE I – DEFINITIONS – INTERPRETATION**                    4

**ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS**         11

**ARTICLE III – ADMINISTRATIVE EXPENSES**                       12

**ARTICLE IV – TREATMENT OF UNIMPAIRED CLASSES**                13

**ARTICLE V – TREATMENT OF IMPAIRED CLASSES OF CLAIMS**         14

**ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES**       15

**ARTICLE VII – MEANS FOR IMPLEMENTATION OF PLAN**              16

**ARTICLE VIII – PROVISIONS GOVERNING DISTRIBUTION**            18

**ARTICLE IX – PROCEDURES FOR RESOLVING
AND TREATING CONTESTED CLAIMS**                                 19

**ARTICLE X – TRUSTEE FEES**                                    20

**ARTICLE XI – DISCHARGE, LIMITATION OF
LIABILITY, GENERAL INJUNCTION AND CAUSES OF ACTION**            20

**ARTICLE XII – RETENTION OF JURISDICTION**                     21

**ARTICLE XIII – MISCELLANEOUS PROVISIONS**                     22

## ARTICLE I – DEFINITIONS – INTERPRETATION

**A.**    **Definitions**

For purposes of this Plan, the following definitions shall apply unless the context clearly requires otherwise:

**Administrative Claim** shall mean any Claim for the payment of an Administrative Expense.

**Administrative Claims Bar Date** shall mean, the last day established by the Bankruptcy Court for filing an application, request or motion for an Administrative Claim.

**Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 Case that is allowed under §§ 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, request or motion seeking such cost or expense in the Chapter 11 Case on or before the applicable Administrative Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the estate or operating the business of the Debtor in Possession (including wages, salaries, or commissions for services rendered) incurred after the Petition Date, (ii) any post petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course of its business, (iii) any claim granted administrative priority status by a Final Order of the Bankruptcy Court, and (iv) compensation or reimbursement of expenses of professionals awarded or Allowed pursuant to an order of the Bankruptcy Court under §330(a) or 331 of the Bankruptcy Code, 28 U.S.C. §§ 1911-30; and (v) any and all other costs or expenses of administration of the Chapter 11 Case that are Allowed by a Final Order of the Bankruptcy Court; provided, however, that notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any transferred claim, any Disallowed Claim, or unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 3.

**Allowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest (a) proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (i) as to which no objection has been filed by the Objection Deadline, unless such Claim or Interest is to be determined in a forum other than the Bankruptcy Court, in which case such Claim or Interest shall not become allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or (ii) as to which an objection was filed by the Objection Deadline, to the extent Allowed by a Final Order; (b) Allowed by a Final Order; or (c) listed in the Debtor's schedules filed in connection with this Chapter 11 Case and not identified as contingent, unliquidated, or disputed.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Priority Tax Claim** shall mean a Priority Claim pursuant to U.S.C. § 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the Line underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Assets** shall mean all the assets, property, and cash of the Debtor, as defined in § 541 of the Bankruptcy Code (excluding assets previously distributed, expended or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, the Causes of Action.

**Ballot** shall mean the ballot accompanying the Disclosure Statement upon which Holders of Impaired Claims or Impaired Equity Interests entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the voting instructions.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Code** shall mean 11 U.S.C. §101 *et seq*., and any amendments thereto.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, and any Bankruptcy Court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom.

**Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure ("F.R.B.P."), as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended ("The Local Rules").

**Bar Date** shall mean either February 27, 2017, for non-governmental units or 180 days from the Petition Date, for governmental units, the dates fixed by order of the Bankruptcy Court by which proofs of Claim or Interest must be filed against the Debtor.

**Business Day** shall mean any day except Saturday, Sunday, or any legal holiday.

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits or other similar items.

**Causes of Acton** shall mean the following actions and causes of action and the proceeds thereof, whether or not commenced as of the date hereof, all of which shall be vested in the Debtor: (a) all proceedings, commenced or to be commenced pursuant to Bankruptcy Code § 502 and §§ 544-551 (or equivalent provisions of applicable non-bankruptcy law); and (b) all claims against Creditors or Holders of Interests, parties having dealings, relationships or

transactions with or related to the Debtor, and any party named or identified in the Debtor's schedules or statement of financial affairs, any pleadings filed in this Chapter 11 case, and (c) the Debtor's right of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity and any other indirect claim of any kind whatsoever.

**Chapter 11 Case** shall mean the Chapter 11 reorganization case of the Debtor pending in the Bankruptcy Court, specifically Case No. 6:16-bk-07294-RAC, under the caption *In re The Table, LLC.*

**Claims Objection Bar Date** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 60 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**Class** shall mean a group of Claims of Interests substantially similar to each other as classified under this Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.* shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereto.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to § 1129 of the Code.

**Confirmation Date** shall mean the date the Confirmation Order becomes final and non-appealable.

**Confirmation Hearing** shall mean the hearing set by the Bankruptcy Court for the hearing on confirmation of the Debtor's Plan.

**Confirmation Order** shall mean the order entered by the Bankruptcy Court confirming the Plan.

**Debtor** shall mean The Table, LLC.

**Debtor-in-Possession** shall mean The Table, LLC, as Debtor-in-possession in this Chapter 11 Case.

**Disallowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest to the extent fourteen (14) days have expired since the Claim or Interest was disallowed by order of the Bankruptcy Court, unless proper application for a stay of such order has been made within such fourteen (14) day period and granted, in which case the Claim or Interest shall be disallowed thirty (30) days after entry of the order disallowing such Claim or Interest, unless prior to the expiration of such period, a stay is obtained with respect to the order disallowing the Claim or Interest.

**Disclosure Statement** shall mean the joint disclosure statement of the same date as this Plan that was filed by the Debtor and approved by the Bankruptcy Court pursuant to Bankruptcy Code Section 1125 and any amendments thereto, including all exhibits.

**Disputed Claim** shall mean any Claim other than a Disallowed Claim that has not been Allowed by an order of the Bankruptcy Court and as to which (a) a Proof of Claim has been filed with the Bankruptcy Court or is deemed filed under applicable law or order of the Bankruptcy Court, and (b) an objection has been or may be timely filed or deemed filed under applicable law and any such objection has not been: (i) withdrawn; (ii) overruled or denied by an order of the Bankruptcy Court; or (iii) granted by an order of the Bankruptcy Court.  In addition to the foregoing, a Disputed Claim shall also mean a Claim that has not been Allowed by an order of the Bankruptcy Court, whether or not an objection has been or may be timely filed, if (a) the amount of Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Debtor's schedules or set forth in the Plan, (c) any corresponding Claim has been scheduled in the Debtor's schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Debtor's schedules, or (e) such claim is reflected as unliquidated or contingent in the Proof of Claim filed with respect thereof.  To the extent an objection relates to the allowance of only a part of the Claim, such Claim shall be a Disputed Claim only to the extent of the objection.  To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled.

**Distribution** shall mean the Distribution to the holders of Allowed Claims.

**Distribution Date** when used with respect to each Claim or Interest shall mean the date on which distributions to the Holder of the Claim will be made in accordance with the Plan.

**DOR** shall mean the State of Florida-Department of Revenue.

**Effective Date** shall mean: (a) if no stay of the Confirmation Order is in effect, then the date which is a Business Day, selected by the Debtor, which is not more than thirty (30) days following the date of the Confirmation Order; or (b) if a stay of the Confirmation Order is in effect, then the date which is a Business Day selected by the Debtor which is not more than thirty (30) days following the date the stay is vacated or any appeal, rehearing, remand or petition for *certiorari* is resolved in a manner that does not reverse or materially modify the Confirmation Order. All references in this Plan to the Effective Date shall mean to the applicable Effective Date and any references to "applicable Effective Date" in this Plan is for additional clarification and shall not be interpreted to alter this definition when the term applicable is not utilized.

**Equity Interest** shall mean the interests in the Debtor held by Holders of existing common stock, including any and all options, warrants or similar instruments for the acquisition of shares of existing common stock of the Debtor.

**Estate Assets** shall mean all the assets, property, and cash of the Debtor, as defined in § 541 of the Code (excluding assets previously distributed, expended, or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitations the Causes of Action.

**Final Order** shall mean (a) an order, judgment, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Chapter 11 Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and to which (i) no appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has been taken and is pending and the time for filing such appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

**Fiscal Year** shall mean the fiscal year of the Debtor, which commences on the first day of January and concludes on the final day of December in that same calendar year.

**Governmental Authority** shall mean any agency, board, executive, court, commission, department, legislature, tribunal, instrumentality or administration of the United States, a foreign country or the State of Florida or any other State, provincial, territorial, municipal, local or other governmental entity in the United States or the Public Utilities Commission of any State or a foreign country.

**Holder** shall mean (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has transferred the Claim to a third party and advised the Debtor or the Reorganized Debtor in writing of such transfer and provided sufficient written evidence of such transfer, the transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register maintained by the Debtor or the Transfer Agent or as otherwise determined by the Bankruptcy Court.

**Impaired** shall mean, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such shares or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in the Debtor.

**IRS** shall mean the United States Department of the Treasury-Internal Revenue Service.

**Liabilities** shall mean any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due, payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen and unforeseen, in law, equity or otherwise, of or relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, of any assets of the Debtor, the business or operations of the Debtor, the Chapter 11 Case, or the Plan, including any liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor or any other party with standing to bring such a challenge.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Objection Deadline** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 60 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**OCTC** shall mean the Orange County Tax Collector.

**Order** shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtor; provided, however, that any due and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

**Person** shall mean any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in §101(41) of the Bankruptcy Code.

**Petition Date** shall mean November 7, 2016, the date on which the petition for relief was filed in the Debtor's Chapter 11 Case.

**Plan** shall mean this chapter 11 Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

**Plan Payment** shall mean payments made by the Reorganized Debtor pursuant to the terms of the Plan.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Non-Tax Claim** shall mean a Claim entitled to priority pursuant to §§507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code.

**Priority Tax Claim** shall mean a Claim entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code.

**Proof of Claim** shall mean a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to F.R.B.P. 3001, 3002, or 3003.

**Professional** shall mean (i) any professional retained in the Chapter 11 Case pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to §1129(a)(4) of the Bankruptcy Code.

**Reorganized Debtor** shall mean The Table, LLC, following the Effective Date.

**Rule or Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable nonbankruptcy law. A Secured Claim which is challenged by the Debtor shall only be Allowed to the extent that such claim is deemed to be Allowed in the Plan or the underlying security interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditors Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as defined in § 101(51) of the Code.

**TJP** shall mean the Tardugno Jensen Partnership and Kyle Jensen and Michele Tardugno, jointly and severally.

**TJP Collateral** shall mean any and all assets of the Debtor subject to the security interest of TJP.

**Unimpaired Claim** shall mean a Claim that is not impaired within the meaning of §1124 of the Bankruptcy Code.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21, located in the Middle District of Florida, Orlando, Florida.

**Unsecured Claim** shall mean a Claim other than an Administrative Expense, a Priority Non-Tax Claim, a Priority Tax Claim, a Secured Claim, or an Equity Interest.

### B.    Bankruptcy Code Definitions
Definitions in the Bankruptcy Code and Bankruptcy Rules shall be applicable to the Plan unless otherwise defined in the Plan. The rules of construction in Bankruptcy Code §102 shall apply to the Plan.

### C.    Undefined Terms
A term used in the Plan and not defined herein has the meaning ascribed to such term in the Bankruptcy Code or Rules.

### D.    Interpretation
Unless otherwise specified, all sections, articles and exhibits referenced in the Plan are to the respective sections in, articles of, or exhibits to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan and the Disclosure Statement shall not be construed as a stipulation or admission, but rather, as a statement made in settlement negotiations. Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or in the Bankruptcy Rules, as the case may be, the Bankruptcy Code or the Bankruptcy Rules definition will be controlling in the case of a conflict or ambiguity.

## ARTICLE II –CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    General Rules of Classification
Generally, a Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of the Class, and is classified in another

Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class. If a Claim qualifies for inclusion in a more specifically defined Class, then the Claim shall be included only in the more specifically defined Class. Notwithstanding anything contained herein to the contrary, if a Claim is not allowed, then the Debtor is not bound by a classification made or implied herein.

**B.**    **Classifications**

All Claims and Interests treated under Articles III - V of the Plan are divided into the following classes, which shall be mutually exclusive:

Class 1 – TJP Secured Claim

Class 1 consists of the Allowed Secured Claim of TJP, should one exist. This Claim maybe secured by liens on the TJP Collateral. The Allowed Class 1 Secured Claim is $272,353.00. This Class is Impaired.

Class 2 – OCTC Secured Claim

Class 2 consists of the Allowed Secured Claim of the OCTC. This claim is secured by statutory liens on the Debtors personal property. The Allowed Class 2 Claim is $269.40. This Class is Unimpaired.

Class 3 – Non-Insider Unsecured Claims

Class 3 consists of the Allowed Non-Insider Unsecured Claims against the Debtor. The Allowed Class 3 Claims are estimated in the amount of $74,184.65. This Class is Impaired.

Class 4 – Insider Unsecured Claims

Class 4 consists of the Allowed Insider Unsecured Claims against the Debtor. This Class is Impaired.

Class 5 – The Table, LLC, Equity Interests

Class 5 consists of any and all membership interests and warrants currently issued or authorized in The Table, LLC. This Class is Impaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES

**A.**    **Administrative Claims**

1.    **Nonordinary Course Administrative Claims**

a.    Any person, including any professional who has rendered services to the Debtor during the course of this Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under § 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed *infra*, shall, on or before the Administrative Claims Bar date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of any basis for such Claim; provided, however,

that applicants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to timely file an application, motion, or request for allowance pursuant to this Section by any holder of Nonordinary Course Administrative Expense Claim shall bar such claimant from seeking recovery on such Claim.

> b.     Each holder of a Nonordinary Course Administrative Claim of the Debtor shall be paid by the Debtor one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such holder, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. Debtor's cash on hand as of the Effective Date shall be first used to pay Nonordianry Course Administrative Claims. However, nothing in this provision of the Plan shall preclude the Debtor from paying any holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim holder consents to different payment terms.

> 2.     **Ordinary Course Administrative Claims**

> Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Debtor in accordance with the terms and conditions of agreement or applicable law giving rise thereto. An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

> B.     **Priority Tax Claims**

Except to the extent that the Holder and the Debtor have agreed or may agree to a different treatment, each holder of an Allowed Priority Tax Claim[1] against the Debtor shall receive on account of such Claim, the amount of such Holder's Allowed Claim in accordance with § 1129(a)(9)(c) of the Code, which will be paid based on a fifty-four (54) month amortization and maturity with payments made monthly. Holders of Allowed Secured Tax Claims shall receive interest at the four and three-quarters percent (4.75%). Payments will commence on the later of the Effective Date or on such date as a respective Priority Tax Claim becomes Allowed.

## ARTICLE IV – TREATMENT OF UNIMPAIRED CLASSES

> A.     **Class 2 – OCTC Secured Claim**

Class 2 consists of the Allowed Secured Claim of the OCTC. This claim is secured by statutory liens on the Debtors personal property. The Allowed Class 2 Claim is $269.40. This Class is Unimpaired.

> The Holder of the Allowed Class 2 Claim shall receive cash on the Effective Date equal to one hundred percent (100%) of its allowed Class 2 Claim.

---

[1] Any difference between the amount of the Allowed Priority Tax Claim and the Allowed Claim that does not qualify for priority treatment under 11 U.S.C. 507(a)(8) shall be treated as a Class 3 Non-Insider Unsecured Claim.

## ARTICLE V – TREATMENT OF IMPAIRED CLASSES OF CLAIMS

### A.    Determination of Allowed Amounts

Treatment prescribed for Claims and Interests in the following sections of Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the date on which the Plan provides for a Distribution to be made on account of such Claim, then no Distribution on account of such Claim shall be made until the Claim becomes an Allowed Claim. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law as well as the right to assert that any such Claim included amounts subject to equitable subordination or other equitable relief. The Reorganized Debtor will be responsible for all Claim objections, and all such objections will be filed on or before the Claims Objection Bar Date. Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction to adjudicate any objections to Claims filed on or before the Claims Objection Bar Date.

### B.    Impairment/Classification Controversies

If there is a controversy regarding the classification or impairment of a Claim or Interest, then such controversy shall be determined by the Bankruptcy Court after notice and a hearing.

### C.    Class 1 – TJP Secured Claim

Class 1 consists of the Allowed Secured Claim of TJP, should one exist. This Claim maybe secured by liens on the TJP Collateral. The Allowed Class 1 Secured Claim is $272,353.00. This Class is Impaired.

This class consists of the claim of insiders as defined in the Bankruptcy Code. This claim shall be subordinated to allowed Priority Tax Claims and Class 2 claims.

In full satisfaction of its Allowed Secured Class 1 Claim TJP shall: (i) retain its lien on the TJP Collateral and (ii) receive payments in the full amount of the Allowed Secured Class 1 Claim for the TJP Collateral as better described *infra*. The payments shall be paid through the net proceeds of any and all lawful business means, or upon the sale of the TJP Collateral. On the first day of the month following payment of all Priority Tax Claims and all Non-Insider Unsecured Claims, the Reorganized Debtor will commence monthly payments to TJP on account of its Allowed Secured Class 1 Claim based upon fixed monthly payments of $2,888.73 based on a ten (10) year amortization and maturity, with interest at five percent (5%) per annum. The Allowed Secured Claim of TJP shall not accrue interest until all Priority Tax Claims and all Non-Insider Unsecured Claims are paid. If the Allowed Class 1 Claim is paid in full on or prior to the maturity date, TJP shall release and terminate all security interests in the property owned by the Debtor.

Alternatively, The Debtor may transfer all or part of the TJP Collateral to TJP as the indubitable equivalent of its Allowed Secured Claim, pursuant to 11 U.S.C. § 1129(b)(2)(A)(iii).

**D.**    **Class 3 – Non-Insider Unsecured Claims**

Class 3 consists of the Allowed Non-Insider Unsecured Claims against the Debtor. The Allowed Class 3 Claims are estimated in the amount of $74,184.65. This Class is Impaired.

In full satisfaction of the Allowed Class 3 Claims, holders of such claims shall receive a Pro Rata share of the monthly unsecured payment of $1,236.41. Holders of Class 3 Claims will have their claims paid in full, except that the maximum sum to be paid shall be no greater than an aggregate sum of $74,184.65 (the "Unsecured Pot") which the Debtor believes is the maximum amount of all legitimate Allowed Class 3 Claims. The monthly unsecured payment of $1,236.41 shall be paid over sixty (60) months until the entire Unsecured Pot of $74,184.65 is paid out on a Pro Rata basis. The Reorganized Debtor will make the monthly payments on or before the first day of the month sixty (60) days after the Effective Date. The Reorganized Debtor will continue to make the monthly unsecured payments to holders of Allowed Class 3 Claims on a Pro Rata basis until the claims are paid in full or the entire Unsecured Pot is paid out.

In the event the Reorganized Debtor enters into a post-confirmation sale transaction in which all or substantially all of the assets of the Reorganized Debtor are sold, holders of the Cash Flow Notes shall be paid in full prior to any funds being paid to the Equity Holders on account of such sale.

**E.**    **Class 4 – Insider Unsecured Claims**

Class 4 consists of the Allowed Insider Unsecured Claims against the Debtor. This Class is Impaired.

This class consists of the claim of insiders as defined in the Bankruptcy Code. This claim shall be subordinated to allowed Priority Tax Claims and Class 2 claims.

In full satisfaction of the Allowed Class 4 Claims, holders of such claims shall receive Pro Rata share of the monthly money available for distribution from the Reorganized Debtor until such Holder's claim is paid in full. The payments shall be paid through the net proceeds of any and all lawful business means. Holder of Insider Unsecured Claims shall not be paid until all other claims are paid in full.

**G.**    **Class 5 – The Table, LLC, Equity Interests**

Class 5 consists of any and all equity interests and warrants currently issued or authorized in Debtor.

Class 5 shall receive no distribution on account of its equity interests.  Holders of Class 5 interest shall retain their full equity interest in the same amounts, percentages, manner and structure as existed on the Petition Date.  This Class is Impaired.

## ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

If the Bankruptcy Court has not previously entered an order approving assumption, rejection and/or assignment of leases and executory contracts, then the Confirmation Order shall constitute an order of the Bankruptcy Court approving all such assumptions, assignments, and rejections of executory contracts and unexpired leases as of the Petition Date, unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease. The Debtor and Reorganized Debtor intends to assume the

executory contracts with all vendors. The principle of the Debtor is currently negotiating with the landlord. The Debtor intends to assume the lease with the landlord and all vendors.

If an executory contract or unexpired lease is rejected, then the other party to the agreement may file a Claim for damages incurred by reason of rejection within such time as the Bankruptcy Court may allow or be forever barred. Such Claim shall be served upon the Debtor. In the case of rejection of leases of real property, damages are limited under the Bankruptcy Code. Such claims shall be deemed to be Class 2 General Unsecured Claims. The Plan shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

To the extent any indemnification obligation of the Debtor (whether pursuant to its charter, by-laws, agreement, or to law) existing as of the Petition Date to any current or former, officer, director or employee of the Debtor constitutes an executory contract, the Debtor shall be deemed to have rejected such contract immediately before the Petition Date pursuant to §365 of the Bankruptcy Code.

## ARTICLE VII – MEANS OF IMPLEMENTATION

### A.    Continued Corporate Existence

The Debtor shall continue to exist as the Reorganized Debtor, doing business under the name The Table, LLC. The Reorganized Debtor's officers, directors and administrative structure shall be as follows:

1.    **Administrative Structure**
The following is a breakdown of the existing administrative structure:
a.    Manager;
b.    Members;
c.    Employees
d.    Contract labor.

The above listed administrative structure will continue to operate the Reorganized Debtor and will supervise the business operations of the Debtor.

2.    **Manager**
Dominick Tardugno shall remain managing member of the Reorganized Debtor. The manager shall have broad authority with respect to the conduct of the business of the Reorganized Debtor, including the right and power to enter into agreements regarding project bidding, vendor and sub-contractor selection, to borrow money to pay obligations, and to exercise all other specific powers described in the Reorganized Debtor's operating agreement.

3.    **Members**
The Members of the Reorganized Debtor shall remain the same as the Members of the Debtor.

4.      **Equity Interests in Reorganized Debtor**

After Confirmation but prior to the Effective Date all currently issued or authorized outstanding Equity Interests in the Debtor shall be vested in holders of such pre-petition Equity Interests.

B.      **Articles of Organization and Operating Agreement**

The Articles of Incorporation and Operating Agreement of the Debtor will be amended, as necessary, to include provisions required (a) under the Bankruptcy Code with respect to the Reorganized Debtor's equity interests and (b) the provisions of the Debtor's Plan. Consistent with Section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtor's Articles shall, among other things, prohibit the issuance of nonvoting equity securities as part of the reorganization. The Operating Agreement of the Reorganized Debtor shall be amended as necessary for the purpose of consummating and implementing the transactions and acts contemplated by this plan. The Confirmation Order shall include appropriate language approving the Reorganized Debtor's Articles and the amended Operating Agreement. The Reorganized Debtor's Articles and the amended Operating Agreement shall be the Articles and Operating Agreement governing the Reorganized Debtor on and after the Effective Date.

C.      **Post-Effective Date Operations**

The property of the Debtor's estate will transfer to the Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtor will be allowed to operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code. All property of the Reorganized Debtor will be free and clear of all Claims and Interests, except as specifically provided in the plan.

D.      **Means for Implementing Plan**

1.      **Business Operations and Cash flow**

The Plan contemplates that the Reorganized Debtor will continue to operate the Debtor's business. The Reorganized Debtor believes the cash flow generated from the continued operation of the Debtor's business will be sufficient to meet the operating needs and Plan Payments.

2.      **Funds Generated During Chapter 11**

Except as explicitly set forth in this Plan, all cash in excess of operating expenses generated from operation until the Effective Date will be used for Plan Payments or Plan implementation; however, subject to the projections attached to the Disclosure Statement, cash on hand as of Confirmation shall be available for Administrative Expenses.

3.      **Section 1146 Exemption**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

4.    **Employment of Professionals Post-Confirmation**

After the Effective Date the Reorganized Debtor may retain professionals on such terms as the Reorganized Debtor deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtors prior to the Effective Date may also continue to serve the Reorganized Debtor.

E.    **Revesting of Assets**

The remaining property of the estate of the Debtor shall vest in the Reorganized Debtor on the Effective Date, except as otherwise provided in the Plan. As of the Effective Date, all property of the Debtor or Reorganized Debtor shall be free and clear of all Claims and Interests, except as specifically provided in the Plan.

F.    **Limitations of Liability**

The Debtor, and the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this plan, shall have no liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the initial Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document relating to, rising out of or in connection with the Plan, unless the liability of any entity that would otherwise result from any such act or omission was the result of gross negligence.

## ARTICLE VIII – PROVISIONS GOVERNING DISTRIBUTION

A.    **Cash Payments**

Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn against a domestic bank, or by wire transfer from a domestic bank.

B.    **Delivery of Distributions**

Distributions and deliveries to Holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such holders if no proof of Claim is filed or if the Debtor or Reorganized Debtor has/have been notified of a change of address). If any distribution to a Holder is returned as undeliverable, then no further distributions to such Holder shall be made unless and until the Debtor or Reorganized Debtor is notified of the Holder's then-current address, at which time all missed distributions shall be made to such Holder, without interest. All Claims for undeliverable distributions shall be made on or before the first anniversary of the Distribution Date. After such date, all unclaimed property shall revert to the Debtor or Reorganized Debtor, and the claim of any Holder with respect to such property shall be discharged and forever barred.

C.    **Time Bar to Cash Payments**

Checks issued by the Debtor or Reorganized Debtor with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any checks shall be made directly to the Debtor or Reorganized Debtor by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim with respect to such a voided check shall be made on or before the later of the first anniversary of the Distribution Date or ninety (90) days after the date of

issuance of such check. After such date, all Claims with respect to void checks shall be discharged and forever barred.

### D.      Transfer of Claim

In the event that the Holder of any Claim shall transfer such Claim on or after the Effective Date, the Holder shall immediately notify the Reorganized Debtor in writing of such transfer and provide sufficient written evidence of the transfer. The Reorganized Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Reorganized Debtor has received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver, or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice thereafter shall be vested with all rights and powers of the transferor under the Plan.

## ARTICLE IX – PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

### A.      Objection Deadline

Unless extended by the Bankruptcy Court, the Debtor and the Reorganized Debtor shall file any objections to Claims or Interest no later than sixty (60) days after the Confirmation Date.

### B.      Prosecution of Objections

The Debtor and the Reorganized Debtor shall have authority to file objections, litigate to judgment, settle, or withdraw objections to Disputed Claims or Interests. All professional fees and expenses incurred by the Debtor or Reorganized Debtor from and after the Confirmation Date shall be paid as provided in Article III hereof.

### C.      No Distributions Pending Allowances

No payments or distributions shall be made with respect to any Disputed Claim or Interest unless and until all objections to such Claim or Interest are resolved and such Claim becomes an Allowed Claim or Interest.

### D.      Escrow of Allocated Distributions

The Debtor shall withhold from the property to be distributed under the Plan, and shall place in escrow, amounts sufficient to be distributed on account of Contested Claims. As to any Contested Claim, upon a request for estimation by the Debtor, the Bankruptcy Court shall determine what amount is sufficient to withhold in escrow pending Disallowance of the Claim. The Debtor shall also place in escrow any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld in escrow pursuant hereto, to the extent such property continues to be withheld in escrow at the time such distributions are made or such obligations arise.  If practicable, Debtor may invest any cash it has withheld in escrow in a manner that will yield a reasonable net return, taking into account the safety of the investment.

### E.    Distributions After Allowance

Payments and distributions from escrow to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, any property in escrow that would have been distributed prior to the date on which a Disputed Claim become an Allowed Claim shall be distributed, together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property from the date such distributions would have been due had such Claim then been an Allowed Claim to the date such distributions are made.

### F.    Distributions After Disallowance

If any property withheld in escrow remains after all objections to Disputed Claims of a particular Class have been resolved, then such remaining property, to the extent attributable to the Disputed Claims, shall be distributed as soon as practicable in accordance with the provisions of the Plan governing the Class of Claims or Interest to which the Disallowed Claim or Interest belong.

## ARTICLE X – TRUSTEE FEES

All fees payable under 28 U.S.C. §1930, as determined by the Court at the hearing on confirmation of the Plan, will be paid on or before the Effective Date.

## ARTICLE XI – DISCHARGE, LIMITATION OF LIABILITY, GENERAL INJUNCTION AND CAUSES OF ACTION

### A.    General Injunction

Pursuant to §105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold, or may hold a Claim or other Debt, Liability or Equity Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Equity Interest, other than actions brought to enforce rights or Claims not discharged under the Plan, Confirmation Order, or the Plan documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by the Plan; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this plan; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this plan; (d) asserting a setoff, right of subrogation or recoupment of any kind against any Debt, Liability or obligation due to the Debtor, the Reorganized Debtor for the purpose of consummating and implementing the transactions and acts contemplated by this plan;

(e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or Confirmation Order. The Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this plan, shall have the right to independently seek enforcement of this general injunction provision.

**B.     No Liability for Tax Claims**

Unless a taxing governmental authority has asserted a Claim against the Debtor before the Bar Date established therefor, no Claim of such Governmental authority shall be allowed against the Debtor or the Reorganized Debtor for taxes, penalties, interest, additions to the tax or other charges arising out of the failure, if any, of the Debtor, any of its affiliated, or any other Person or Entity, to have paid the tax or to have filed any tax return (including any excise tax return, income tax return or franchise tax return) in and for any period or arising out of any audit of any return for a period before the Petition Date. The Reorganized Debtor shall be responsible for the filing of all unfiled tax returns of the Debtor relating to any period prior to the Effective Date.

**C.     Exculpation from Liability**

Each of the listed parties shall have the right to individually seek enforcement of this provision. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

**D.     No Successor Liability**

Except as otherwise provided in the Plan or in the Confirmation Order for the purpose of consummating and implementing the transactions and acts contemplated by this plan do not, and shall not be deemed to, pursuant to the Plan, or otherwise, assume, agree to perform, pay or indemnify any Holders of any Claims or Equity Interest or otherwise have any responsibilities for any Liabilities, Claims, Debts or obligations of the Debtor or the Reorganized Debtor, whether arising prior to, on or after the Effective Date, for the purpose of consummating and implementing the transactions and acts contemplated by this plan, is not, nor shall it be deemed to be a successor or successor in interest to the Debtor by reason of any theory of law or equity, and shall have no successor or transferee liability of any kind or character, and the Confirmation Order shall contain language to this effect.

## ARTICLE XII – RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain the fullest and most expansive jurisdiction that is permitted under applicable law to issue any order or process to carry out the provisions of the Plan, including, but not limited to, determine all claims, enforce all obligations established in the Plan and the Confirmation Order, adjudicate any adversary proceeding or contested matter pending on the Confirmation Date or contemplated in the Plan or available under the Plan, determine any application for the allowance of compensation pursuant to §330, 331 or 503(b), to enforce and interpret the Plan and to resolve any dispute and questions of any kind arising in connection with any act arising out of or contemplated by the Plan and the rights created herein or in the Confirmation Order.

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as set forth specifically in the preceding paragraph.

## ARTICLE XIII – MISCELLANEOUS

**A.    Modification of the Plan**

The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan as modified and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rule requirements.

After entry of the Confirmation Order, the Debtor or the Reorganized Debtor (as the case may be) may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (a) the Debtor or the Reorganized Debtor (as the case may be) obtains approval of the Bankruptcy Court for such modification, after notice and hearing, and (b) such modification shall not materially or adversely affect the interests for the purpose of consummating and implementing the transactions and acts contemplated by this plan, or the interests, rights, treatment, or distributions of any Class of Allowed Claims or Equity Interests under the Plan.

After the Confirmation Date, and before substantial consummation of the Plan, the Debtor or the Reorganized Debtor (as the case may be) may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or distributions of a Class of Claims or Equity Interests, provided that: (a) the Plan, as modified, meets applicable Bankruptcy Code requirements, (b) the Debtor or the Reorganized Debtor obtains Bankruptcy Court approval of such modification, after notice and hearing; and (c) such modification is accepted by a least two-thirds (2/3) in amount, and more than one-half (1/2) in number, of Allowed Claims or by at lease two-thirds (2/3) in amount of Allowed Equity Interests voting.

**B.    Confirmation Order and Plan Control**

To the extent that the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any other orders of the Bankruptcy Court) shall be construed together with the terms of the Plan.

**C.    Governing Law**

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provide otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**D.    No Admissions**

Nothing herein shall be construed to be an admission of any fact by the Debtor or otherwise binding upon the Debtor in any manner prior to the Effective Date.

E.       **Revocation or Withdrawal of the Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to: (a) constitute a waiver or release of any Claims by or against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

F.       **Further Assurances**

The Debtor or the Reorganized Debtor (as the case may be) agree, and is/are hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements, and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

G.       **Notices**

All notices, requests or other documents in connection with, or required to be served by the Plan shall be in writing and shall be sent by United States Mail, postage prepaid, or by overnight delivery by a recognized courier service to the following:

Counsel for the Debtor and Reorganized Debtor:

Jeffrey S. Ainsworth, Esquire
1501 East Concord Street
Orlando, Florida 32803

Debtor and Reorganized Debtor:

The Table, LLC
8060 Via Dellagio Way
Suite 106
Orlando, FL 32819

United States Trustee:

Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 3100
Orlando, Florida 32801

H.       **Estimated Claims**

To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claims be Allowed in an amount Greater than the estimated amount.

I.       **Consent to Jurisdiction**

Except to the extent that any agreement, including any loan-related document emanating from this Plan provides for jurisdiction in another forum, upon any default under the

Plan, the Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions contemplated by this Plan, consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default.

By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by voting on the Plan, or by entering an appearance in the Chapter 11 Case, all Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors, and foreign parties in interest, have consented and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Chapter 11 Case, including the matters and purposes set forth in Article II of the Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article II of the Plan.

**J.** **Modification of Payment Terms**

The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in §1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon consent of the Holder of such Allowed Claim.

THIS SPACE INTENTIONALLY BLANK.

### K.    Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distribution, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

### L.    Distribution of Unclaimed Property

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan, which is unclaimed after six months following the relevant distribution date shall be forfeited and such distribution together with all interest earned thereon shall become an Asset of the Reorganized Debtor.

Dated: February 28, 2017.


 /s/ Jeffrey S. Ainsworth
Jeffrey S. Ainsworth, Esquire
Fla. Bar No.: 060769
E-mail: *jeff@bransonlaw.com*
**BransonLaw, PLLC**
1501 E. Concord Street
Orlando, Florida 32803
Telephone (407) 894-6834
Fax (407) 894-8559
Attorney for Debtor